```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


------------------------------x
LUT MUHAMMAD,                 :
                              :
         Petitioner,          :
                              :
    v.                        :    Civ. No. 3:14CV1384(AWT)
                              :
UNITED STATES OF AMERICA,     :
                              :
         Respondent.          :
------------------------------x
```

**RULING ON MOTION TO**
**VACATE, SET ASIDE OR CORRECT SENTENCE**

Petitioner Lut Muhammad ("Muhammad"), proceeding pro se, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. He makes two arguments. First, he argues that his 240-month sentence was unconstitutional because the grand jury never indicted him based on the new cocaine base quantities enacted as part of the Fair Sentencing Act ("FSA"). Second, he argues that his counsel was ineffective for not raising this claim prior to sentencing. For the reasons set forth below, the motion is being denied without a hearing.

   I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On December 2, 2009, a federal grand jury returned an Indictment against Muhammad and sixteen others charging various

narcotics offenses.[1]  The defendant was arrested on December 3, 2009. In February 2010, after some of the defendants had pleaded guilty to the charges in the original Indictment, the grand jury returned a Superseding Indictment against the defendant, the remaining co-defendants, and two new co-defendants.  In July 2010, the grand jury returned a twelve-count Second Superseding Indictment against the defendant and four remaining co-defendants.  The Second Superseding Indictment charged the defendant with one count of conspiracy to possess with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846; with six counts of possession with intent to distribute or distribution of 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and with four counts of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Subsequently, the government filed a second offender notice as to the defendant, listing five separate prior felony drug convictions as potential qualifiers for enhanced penalties under 21 U.S.C. § 841(b).  On September 7, 2010, the defendant pleaded guilty to each count against him in the Second Superseding Indictment.  At the time of the guilty plea, the

---

[1] On December 2, 2009, the defendant and eight other defendants were also indicted in a fourteen-count indictment in a related case, United States v. Muhammad, et al., 3:09cr265(JBA).  The charges against the defendant in that case were dismissed on July 22, 2010.

defendant entered into a written plea agreement. The parties did not stipulate to quantity as part of the plea agreement. Other than the government's agreement to recommend a three-level reduction for acceptance of responsibility, the parties did not enter into a Guidelines stipulation.

The Pre-Sentence Report ("PSR") found that the defendant had 20 criminal history points and thus was in Criminal History Category VI. The PSR also found that the defendant's conduct involved between 2.8 and 8.4 kilograms of cocaine base, and consequently, that his base offense level was 36. The total offense level was 33 after a three level reduction for acceptance of responsibility. At a total offense level of 33 and Criminal History Category VI, the advisory guideline incarceration range was 235 to 293 months.

The defendant objected to the drug quantity, and the court held an evidentiary hearing to determine the quantity of crack cocaine attributable to the defendant. At the conclusion of the evidentiary hearing, the government argued that the defendant was responsible for distributing in excess of 2.8 kilograms of crack cocaine, and the defendant contended that the quantity was 2.702 kilograms.

At sentencing the court confirmed, and the parties agreed, that the new FSA penalties would apply so that, based on the defendant's most serious offense of conviction, i.e. conspiracy

3

to distribute 50 grams or more of crack cocaine, and the filing of the second offender notice, he faced a mandatory minimum penalty of 10 years under 21 U.S.C. § 841(b)(1)(B), instead of 20 years under 21 U.S.C. § 841(b)(1)(A). The court also overruled the defendant's objection to the second offender notice. In addition, the court found, with respect to quantity, that the government had established by a preponderance of the evidence that 2.8 kilograms of cocaine base should be attributed to the defendant. The court imposed a sentence of 240 months of incarceration and eight years of supervised release.

The defendant appealed, challenging his sentence on two grounds. First, he argued that the court erred in finding that the quantity of crack cocaine attributable to the defendant was between 2.8 and 8.4 kilograms. Second, he argued that the quantity finding should have been made by a jury, not the court, and that the fact that no grand jury or jury had made the necessary quantity findings under the newly amended crack cocaine guidelines under the FSA meant that the court could not apply the statutory mandatory minimum penalties under 21 U.S.C. § 841(b)(1)(B). The defendant's arguments were rejected in an unpublished summary order. See United States v. Muhammad, 520 Fed. Appx. 31 (2d Cir. 2013).

**II. LEGAL STANDARD**

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 only in limited circumstances.

> [A] "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'"

Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (citing United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

> [N]ot "every asserted error of law can be raised on a § 2255 motion." See Davis v. United States, 417 U.S. 333, 346 (1974) . . . . The grounds provided in section 2255 for collateral attack on a final judgment in a federal criminal case are narrowly limited, and it has "long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." United States v. Addonizio, 442 U.S. 178, 184 (1979) . . . ."

Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994), amended on reh'g on other grounds, 45 F.3d 680 (2d Cir. 1995). Constitutional errors will not be corrected through a writ of habeas corpus unless they have had a "substantial and injurious effect," that is, unless they have resulted in "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 623, 637–38 (1993); see also Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht to § 2255 motions).

"A § 2255 motion may not relitigate issues that were raised and considered on direct appeal." United States v.

5

Perez, 129 F.3d 255, 260 (2d Cir. 1997) (declined to review plea withdrawal claim that had already been argued on appeal). This "so-called mandate rule bars re-litigation of issues already decided on direct appeal." Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010)(citation omitted). "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53.

"[F]ailure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice." Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992). This rule is applied because of concerns about "finality, accuracy and the integrity of prior proceedings, as well as concerns of judicial economy." Id. "[C]ollateral review of convictions 'places a heavy burden on scarce judicial resources, may give litigants incentives to withhold claims for manipulative purposes, and may create disincentives to present claims when evidence is fresh.'" Id. (quoting Keeney v. Tamayo Reyes, 504 U.S. 1, 7 (1992)).

To obtain review of procedurally defaulted claims, the petitioner must show both "cause" for the default of each claim and "prejudice" that resulted from the alleged violation. See

6

Ciak v. United States, 59 F.3d 296, 301, 302 (2d Cir. 1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162, 172 n.3 (2002) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). "Where the petitioner--whether a state or federal prisoner--failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice from the alleged . . . violation.'" Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Wainwright, 433 U.S. at 84).

"'Cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him". Coleman v. Thompson, 501 U.S. 722, 753 (1991) (emphasis in original). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." Id. (quotation marks omitted) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

To demonstrate prejudice, a petitioner must convince the court "that 'there is a reasonable probability' that the result of the trial would have been different" if not for the alleged error. Strickler v. Greene, 527 U.S. 263, 289 (1999) (applying the cause-and-prejudice standard to a state procedural default in a § 2254 habeas case). The question is whether, despite the

7

error, "[the petitioner] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. at 289-90 (internal quotation marks omitted) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief". 28 U.S.C. § 2255(b). However, district courts may "exercise their common sense", Machibroda v. United States, 368 U.S. 487, 495 (1962), and may draw upon personal knowledge and recollection of the case, see Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). Thus, a § 2255 motion may be dismissed without a hearing if, after a review of the record, the court determines that the allegations are insufficient as a matter of law.

### III. DISCUSSION

The government argues that the instant habeas petition was not timely filed. The court agrees and, moreover, concludes that assuming arguendo that the petition was timely filed, the petitioner's two arguments fail for additional reasons.

#### A. Untimeliness

Under 28 U.S.C. § 2255,

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of - (1) the date on which the

8

judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Here, the sentence was affirmed by summary order on April 13, 2013 and the mandate was issued on May 21, 2013. The petitioner did not file his § 2255 motion until September 22, 2014, more than a year after the judgment of conviction became final. The petitioner claims that he petitioned the United States Supreme Court for a writ of certiorari, but there is no indication on the docket that any such writ was ever docketed or denied. While the Supreme Court's docket reflects that co-defendant Okeiba Sadio petitioned for a writ of certiorari on May 23, 2013 and the Court denied the petition (See Sadio v. United States, Docket No. 12-10525, 134 S. Ct. 128 (Oct. 7, 2013)), there is no docket entry or record indicating that Muhammad likewise filed a petition.

Therefore, the petition is untimely under 28 U.S.C. § 2255(1).

## B. <u>Constitutionality of the Sentence</u>

The petitioner's challenge to his sentence is barred under the mandate rule because he raised an almost identical claim on appeal. In support of his petition he argues:

> [B]ecause of the terms of the plea agreement, petitioner pled guilty to drug quantities and mandatory minimum sentences that were no longer applicable because of the enactment of the Fair Sentencing Act. <u>See</u> EXHIBIT C (Change of Plea Transcript pg. 72-73). On January 10, 2012, petitioner appeared before Judge Alvin Thompson for sentencing. At sentencing the court violated petitioners Fifth Amendment Right by applying the "Fair Sentencing Act" amended statutory penalty under 21 U.S.C. § 841(b)(1)(B)(iii). The amended version of 841(b)(1)(B)(iii), sets a threshold of 28 grams of crack cocaine. Petitioners Fifth Amendment right was violated on January 10, 2012, because petitioner was sentenced to a 240 month sentence on count one of the Second Superseding Indictment for a violation of 841(b)(1)(B)(iii), when there was no indictment from a Grand Jury for a violation of 21 U.S.C. § 841(b)(1)(B)(iii). This is a fact, because after August 3, 2010, the date the "Fair Sentencing Act", took effect, the government did not seek a Third Superseding Indictment from a Grand Jury, which would have alleged the proper "Fair Sentencing Act" quantity of 28 grams. The 240 month sentence that was imposed by the District Court on count one pursuant to 841(b)(1)(B)(iii), was imposed by the District Court in violation of the Fifth Amendment of the Constitution because there is no indictment from a Grand Jury for 841(b)(1)(B)(iii) . . . .

Mot. to Vacate, Set Aside, or Correct Sentence ("Doc. No. 1") at 10-12.

But on direct appeal the defendant argued that "[t]he district court erred procedurally in sentencing [him] based upon drug quantities neither voluntarily pleaded nor proved to a jury." Appeal Br. at 13. He claimed that "[d]rug

quantities specified under 21 U.S.C. § 841 are elements that must be pleaded or proved to a jury where the quantity of the contraband is used to support a conviction on an aggravated drug offense." Appeal Br. at 13-14. He also argued that the court erred by applying the FSA's amended statutory penalties under 21 U.S.C. § 841(b)(1)(B) instead of those under § 841(b)(1)(C). See Appeal Br. at 16-17. His appellate brief stated:

> Mr. Muhammad stipulated in the Plea Agreement that the conspiracy involved 50 grams or more of cocaine base. . . . Yet, after the passage of the Fair Sentencing Act, the statutory provision at issue required 280 grams or more of cocaine base to support a conviction. See 21 U.S.C. § 841(b)(1)(A)(iii).2 As the Government candidly admits in its Sentencing Memorandum, Mr. Muhammad "was not charged with, nor did he plead guilty to, an offense carrying a quantity threshold in excess of 280 grams of crack cocaine." Therefore, the statutory provision underlying Count I of the Second Superseding Indictment, which refers to 21 U.S.C. § 841(b)(1)(A), varies from the statutory provision underlying the Judgment entered on Count I, which refers to 21 U.S.C. § 841(b)(1)(B). . . .
> 
> Not only did Mr. Muhammad enter into the Plea Agreement under an inapplicable statutory provision, 21 U.S.C. § 841(b)(1)(A), he did so under the threat of the draconian penalties provided by its terms prior to amendment by the Fair Sentencing Act. The Plea Agreement states that Mr. Muhammad would be subject to a mandatory minimum sentence of 20 years of incarceration under § 841(b)(1)(A). . . . Yet, as the Government concedes in its Sentencing Memorandum, that mandatory minimum sentence did not apply after the amendments to § 841(b)(1)(A). . . .
> 
> Instead of correcting the flaws in the Plea Agreement or renegotiating its terms in light of the

11

> more lenient statutory scheme, the Government chose to proceed under § 841(b)(1)(B) instead of § 841(b)(1)(A). See id. It appears that the Government assumed that the 50 grams to which Mr. Muhammad pled guilty would satisfy the new 28-gram threshold under § 841(b)(1)(B).
>
> This is correct as a matter of arithmetic. However, Mr. Muhammad pled guilty under the wrong statutory provisions and under the menace of a mandatory minimum sentence that Congress had found "unfairly long." Dorsey, 132 S. Ct. at 2333. It is safe to assume that Mr. Muhammad stood at a decided disadvantage during the plea negotiations because the Government mistakenly informed him that his baseline sentence could not vary from the 20-year mandatory minimum sentence. The district court nevertheless relied upon the factual basis set forth in the Plea Agreement to convict Mr. Muhammad.
>
> It is unclear from the record whether the change in the law was ever adequately explained to Mr. Muhammad or whether he would have agreed to the plea if he had been apprised of the correct state of the law. What is clear is that he entered into his plea bargain under the terms of an oppressive statutory scheme no longer in force at the time of his plea. This casts a long shadow over the voluntariness of his plea and, by extension, the factual basis for his conviction.

Appeal Br. at 16-17 (internal citations and footnote omitted).

The Second Circuit rejected the defendant's arguments and held that, under the circumstances, it was not error to apply the penalty provision in 21 U.S.C. § 841(b)(1)(B):

> On September 7, 2010, just over a month after the Fair Sentencing Act lowered the penalties for crack cocaine offenses, see Fair Sentencing Act of 2010, Pub.L. No. 111-220, 124 Stat. 2372, Muhammad entered into a plea agreement with the Government and pleaded guilty to counts one through eleven of the second superseding indictment. By pleading guilty to count one of the indictment, Muhammad acknowledged that he conspired to distribute at least 50

12

grams of cocaine base. The plea agreement stated that this conduct violated 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. It therefore provided that Muhammad, who had a prior felony drug conviction, faced a mandatory minimum sentence of 20 years under § 841(b)(1)(A). The Government now concedes that this was incorrect. The higher drug quantity thresholds implemented by the Fair Sentencing Act apply to offenders, like Muhammad, whose criminal conduct occurred prior to the Act but who were sentenced after the Act took effect. *See Dorsey v. United States,* --- U.S. ----, 132 S.Ct. 2321, 2331, 183 L.Ed.2d 250 (2012). Therefore, to be subject to the 20-year mandatory minimum in § 841(b)(1)(A) under the Act, Muhammad would need to have conspired to distribute at least 280 grams of crack cocaine. *See* 21 U.S.C. § 841(b)(1)(A)(iii). If he possessed only 50 grams—more than 28 grams but less than 280 grams—he would be subject to the 10-year mandatory minimum contained in § 841(b)(1)(B). The District Court acknowledged at sentencing that § 841(b)(1)(B) was the applicable penalty provision and that Muhammad was subject to that ten-year mandatory minimum sentence. Nevertheless, it sentenced Muhammad to 20 years' imprisonment based on the Guidelines and the factors listed in § 3553(a). As counsel acknowledged at oral argument, Muhammad never sought to withdraw or otherwise challenge the sufficiency of his guilty plea before the District Court, and our review is therefore for plain error. *See United States v. Garcia,* 587 F.3d 509, 515 (2d Cir.2009).

We reject Muhammad's argument that the District Court erred under *United States v. Gonzalez,* 420 F.3d 111 (2d Cir.2005). In that case, Gonzalez did not admit to, and in fact disputed, the drug quantity element of § 841(b)(1)(A), and that element was never proven to a jury. *Gonzalez,* 420 F.3d at 115. We therefore held that his plea "at best supports conviction on a lesser, unquantified drug charge, whose sentencing range is prescribed by § 841(b)(1)(C)." *Id.* Here, by contrast, Muhammad admitted that his conduct involved at least 50 grams of crack cocaine in his plea allocution and in his plea agreement, both of which supported a conviction for violating § 841(b)(1)(B). We find no support for Muhammad's argument that the more severe penalties in place before the Fair Sentencing Act cast doubt on the voluntariness of his plea. We therefore find no error in his sentence.

<u>United States v. Muhammad</u>, 520 Fed. Appx. at 36-37.

Because the Second Circuit addressed and rejected the same claim regarding his sentencing that Muhammad raises in this petition, the claim is procedurally barred because he "may not relitigate issues that were raised and considered on direct appeal." Perez, 129 F.3d at 260.

### C. Ineffective Assistance of Counsel

The petitioner claims that his trial counsel was ineffective for failing to raise the FSA issue prior to the direct appeal. He argues that his trial counsel:

> rendered constitutionally inadequate representation at sentencing when counsel stood mute and failed to argue at the sentencing hearing that the "Fair Sentencing Act" amended statutory penalty under 21 U.S.C. § 841(b)(1)(B)(iii), which sets a threshold of 28 grams of crack cocaine, [and there] was no indictment of a Grand Jury pertaining to count one. Petitioner also contends that [his counsel] rendered constitutionally inadequate representation at the sentencing hearing when counsel, again stood mute and failed to argue that [for] 841(b)(1)(C), pertaining to Counts Four, Seven, Eight, Nine, T[en], and Eleven was no indictment of a grand jury.

Doc. No. 1 at 17.

In Strickland v. Washington, the Supreme Court held that a defendant must establish (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that counsel's unprofessional errors actually prejudiced the defense. 466 U.S. 668, 688 (1984).

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," [Strickland, 466 U.S.] at 690, and to

14

> satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

Brown v. Artuz, 124 F.3d 73, 79-80 (2d Cir. 1997). A defendant must meet both requirements of the Strickland test to demonstrate ineffective assistance of counsel. If a defendant fails to satisfy one prong, the court need not consider the other. See Strickland, 466 U.S. at 697. "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696-97 (internal citations omitted)). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Id. (quoting Strickland).

The second element of the Strickland test requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (internal quotation marks omitted). "That requires a substantial, not just conceivable, likelihood of a different result." Id. (internal quotation marks omitted). In order to satisfy the prejudice element of the Strickland test, a defendant "must make more than a bare allegation" of prejudice. United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993).

The petitioner's claim fails for two reasons. First, as reflected in the summary order affirming the sentence in the petitioner's case, it was not error for the court to apply the FSA as it did. The grand jury indicted the defendant for the offense of conspiring to distribute 50 grams or more of cocaine base, and the defendant pleaded guilty to that offense. Thus, it was proper for the court to apply the penalties for the 28-gram offense, as set forth in the amended version of 21 U.S.C. § 841(b)(1)(B). Consequently, the petitioner can not establish either that his counsel's performance was below an

objective standard of reasonableness or that the defendant's defense was actually prejudiced.

Second, even if the petitioner's trial counsel had made the claims now being advanced by the petitioner and was successful with respect to these claims, the remedy would not have been dismissal of any charges, but rather a ruling allowing the defendant to withdraw his guilty pleas. If the defendant had withdrawn his guilty pleas, that would have given the government the opportunity, which it did not otherwise have, to seek a superseding indictment charging the 280-gram threshold in Count One so that the defendant would have been exposed to a 240-month statutory mandatory minimum rather than a 10-year one. Thus, a successful challenge by defense counsel based on the legal argument the petitioner now contends was appropriate could have resulted in the defendant facing a higher mandatory minimum sentence. Consequently, once again, the petitioner can not establish either that his counsel's performance was below an objective standard of reasonableness or that the defendant's defense was actually prejudiced.

**IV. CONCLUSION**

For the reasons set forth above, the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is hereby DENIED. The court will not issue a certificate of appealability because Muhammad has not made a substantial

showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2).

It is so ordered.

Signed this 11th day of September, 2017 at Hartford, Connecticut.

                                             /s/AWT
                                     Alvin W. Thompson
                            United States District Judge